U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2026 JUL -9 P 12: 26

CLERK
BY_____
DEPUTY CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

DEVON KURTZ,

      *Plaintiff,*

      v.

JON MURAD, in his official capacity, DAVID BOVAT, in his official capacity, and ANTHONY GIORDANO, in his official capacity,

      *Defendants.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Case No.: No. 2:25-cv-711

## STIPULATED ORDER REGARDING THE DISCOVERY OF ELECTRONICALLY STORED INFORMATION

### 1. Controlling Principles

#### a. Cooperation

Pursuant to Federal Rule of Civil Procedure 26(c) and (f), Plaintiffs and Defendants (each, a "Party" and, collectively, the "Parties") have stipulated and agreed to the following terms with respect to the production of electronically stored information ("ESI") in this action as set forth herein (the "ESI Stipulation").

To the extent reasonably possible, the production of documents shall be conducted to maximize efficient and quick access to documents and minimize related discovery costs. The terms of this ESI Stipulation should be construed to ensure the prompt, efficient, and cost-effective exchange of information consistent with the Federal Rules of Civil Procedure, the Local Rules, and any orders by the Court.

The Parties recognize that this ESI Stipulation is based on facts and circumstances as they are currently known to each Party, and that modifications to this ESI Stipulation may become necessary as more information becomes known to the Parties during the course of discovery.

#### b. Proportionality

    **i. Discovery Requested.** Counsel shall consider the costs and benefits of any discovery requested before issuing the request. Discovery requests, to the extent possible, should be clear and tailored as specifically as possible with respect to substance, date ranges, file types, and custodians. Should a requesting party object to a discovery request as disproportionate, the parties shall work together to resolve any imbalance between the cost and benefit of the subject discovery before bringing the issue to the Court for resolution.

**ii. Preservation.** The scope of preservation established in this Order is intended to strike the proper balance with respect to cost and benefit along with the remaining factors set forth in FRCP 26(b)(1). Should the scope of preservation established in this Order later appear either overinclusive or underinclusive, the party may seek relief from this Order in the manner set forth in this Order.

## 2. Preservation

All parties and counsel are responsible for taking reasonable and proportional steps to preserve unique ESI that is:

- Within their respective possession, custody, or control.

- Within the scope of discovery as defined under FRCP 26(b)(1).

All parties' preservation efforts shall be sufficient to preserve any metadata that the parties agree to produce in this Order.

## 3. Scope of Discovery

### a. Types of ESI

Considering the nature of the claims and defenses asserted, the parties reasonably expect that relevant content is present, but not limited to emails and attachments, voicemail, instant messaging and other electronic communications, word processing documents, text files, hard drives, spreadsheets, graphics, audio and video files, databases, calendars, telephone logs, transaction logs, phone text messages, Internet usage files, offline storage or information stored on removable media, information contained on laptops or other portable devices and network access information and backup materials, Native Files and the corresponding Metadata which is ordinarily maintained.

If any ESI file format requires special treatment not contemplated by these parameters, the Parties agree to meet and confer to discuss how to proceed.

## 4. Sources of ESI

This section:

- Identifies those sources that the parties agree contain unique, discoverable ESI.

- Provides direction regarding the inclusion of additional sources.

The inclusion of an ESI source in discovery, whether identified in this Order or otherwise, does not necessarily obligate a party to collect all ESI available from the source. Rather, the parties are encouraged to use any available methods to exclude ESI that is not reasonably expected to be unique and discoverable in this litigation.

Notwithstanding the early identification of any ESI sources identified below, the parties remain obligated to conduct a reasonable inquiry into whether any additional ESI sources are reasonably expected to contain unique, discoverable ESI. The producing party should search any ESI sources

2

that are reasonably likely to contain unique, discoverable ESI in its ESI collection or search, unless doing so would result in a burden that is disproportionate to the litigation.

### a. Custodial Sources of ESI

Unique, discoverable ESI is reasonably expected to exist on the following custodial sources (sources that are accessible to or maintained by a specific individual, including but not limited to email accounts, personal shares, computers, mobile devices):

    i. Plaintiff

        a. Gmail email account

        b. Mobile device

        c. Cloud storage

        d. Instagram direct messages

        e. Computers, including external storage devices

    ii. Defendants

        a. Email accounts

        b. Mobile devices

        c. Computers, including external storage devices

        d. Cloud storage

### b. Noncustodial Sources of ESI

Unique, discoverable ESI is reasonably expected to exist on the following noncustodial sources (sources that are not accessible to or maintained by a specific individual, including but not limited to group mailboxes, group shares, and hard copy repositories):

    i. Plaintiff

        a. None

    ii. Defendants

        a. ViaPath communications/Getting Out app

        b. Email and file servers

### c. Third Party Sources

    i. The Cicero Policy Institute

    ii. The Quaker Institute for the Future

    iii. The New England Yearly Meeting

    iv. The Quakers of Hanover Friends Meeting

    v. Producciones de la Hamaca

### d. Inaccessible Sources of ESI

The parties agree that the cost of preserving, searching, collecting, processing, reviewing, and producing ESI from certain known sources is expected to outweigh the anticipated benefit of the ESI stored in those locations. Accordingly, the parties presume that the following ESI sources are not reasonably accessible because of undue burden or cost, as contemplated by FRCP 26(b)(2)(B):

    i.    Deleted, slack, fragmented, unallocated, or other data only accessible by forensics.

    ii.    Random access memory (RAM), temporary files, or other ephemeral data.

    iii.    Online access data (such as temporary internet files, history, cache, cookies).

    iv.    Data in metadata fields that automatically updates during routine use (such as the "last opened" and "last accessed" fields).

    v.    Back-up data that is substantially duplicative of data that is more accessible elsewhere.

    vi.    Server, system, or network logs.

    vii.    Electronic data (such as email, calendars, contact data, notes, and text or ephemeral messages) sent to or from mobile devices (such as iPhone, iPad, Android, and Blackberry devices), provided that a copy of all such electronic data is routinely saved elsewhere (such as on a server, laptop, desktop computer, or "cloud" storage) and that location is searched.

This presumption relieves the parties from the obligation to make a specialized showing that the ESI available from these sources is not reasonably accessible because of undue burden or cost under FRCP 26(b)(2)(B). Accordingly, upon a motion for a protective order or to compel discovery under FRCP 26(b)(2)(B) or FRCP 37(a), respectively, the Court will determine whether good cause exists to compel discovery from such sources, despite its inaccessibility. In ruling on such motions, the Court retains its authority under FRCP 26(b)(2)(B) to impose conditions on the discovery and remains subject to limitations established in FRCP 26(b)(2)(C).

### e.  Other Sources of ESI

This Order does not purport to provide an exhaustive list of all ESI sources that are reasonably likely to contain unique, discoverable ESI. The Court's acknowledgement of certain known sources does not relieve the parties of their general obligation to conduct a reasonable inquiry into the location of unique, discoverable ESI. Rather, the specific identification of select sources in this Order is intended to highlight known, agreed ESI sources and aid in the development of a cooperative, transparent discovery process.

## 5.  Collection

Parties shall collect ESI in a manner that enables them to satisfy the production requirements set forth in this Order. The parties must ensure that the collection protocol preserves any Metadata that the parties agree to produce in this Order.

The parties need not collect all ESI from the sources identified in this Order. Rather, the parties are encouraged to use any available methods to exclude ESI that is not reasonably expected to be unique and discoverable in this litigation.

## 6. Processing

A party processing ESI must do so in a manner that enables it to satisfy the production requirements set forth in this Order. The parties must ensure that the processing protocol preserves Metadata that the parties agree to produce in this Order.

### a. De-Duplication

Each party shall de-duplicate ESI during processing if its selected processing tool offers de-duplication. Duplicates are defined as documents that have identical digital fingerprints (such as MD5 hash values).

i. **Near Duplicates.** The parties are encouraged to discuss the extent to which they may exclude near duplicates from discovery and, if appropriate, negotiate the degree of similarity required for them to regard files as near duplicates.

ii. **De-Duplication of Document Families.** Generally, each party shall keep document families (documents containing embedded files or emails that have attachments) intact during processing and production. Notwithstanding the foregoing, a party may deduplicate across custodians (Global/Horizontal Deduplication) so long as the production load file includes an "All Custodians" field as stated in this Order.

ESI that is part of a document family shall not be culled out as duplicative of another document. Rather, a document family may only be culled out as an entire family unit, and only if an exact copy of that entire family unit exists elsewhere in the collected ESI.

A party may treat freestanding or loose ESI (ESI that is not part of a document family) as a duplicate and cull it from a collection if another copy of the ESI is encompassed in a document family elsewhere in the collected ESI.

### b. De-NISTing

Each party is encouraged to de-NIST the collected ESI (that is, remove system files, program files, and other non-user created data) if that function is available in its processing tool.

### c. Exception Reports

If ESI processing results in errors or exceptions, the producing party shall disclose to the requesting party any errors or exceptions that the producing party cannot resolve. The parties shall discuss the same and seek to reach an agreement regarding how they will handle the exceptions.

## 7. Search

A producing party shall disclose what search terms were used, if any, to locate ESI likely to contain discoverable information. Parties shall attempt to reach agreement on appropriate search terms before any query is performed. If a party does not intend to use search terms, it shall disclose the search methodology it intends to use to locate ESI likely to contain discoverable information.

## 8. Production Format

The parties shall produce ESI in native format, with corresponding load files containing the document's text and all available metadata.

### a. Image Specifications and Exceptions

The parties' image file specifications are as follows:

**Native Format Production:** ESI shall be generally produced in Native Format. Documents originally in ESI that have been redacted may be produced as images.

Documents produced in Native Format shall be produced in the manner such files were maintained electronically in the ordinary course of business, or if not technically feasible (*e.g.,* Databases, Structured Data, and Threaded Communications), a reasonably usable electronic format.

**Technical Issues:** If a member of a Document family that has otherwise been determined to be responsive cannot be technically processed (e.g., unsupported file format, file corruption, inaccessible password-protected Document), those technical problems shall be identified and disclosed to the requesting party by production of a Bates-labeled slip sheet that states "Technical issue—file cannot be processed"; the associated Metadata for the file with the technical problem shall be produced if technically possible.

**Load Files:** The Parties shall produce Metadata Load Files for each ESI document which include the following fields:

| Field | Description |
|---|---|
| BegProd | Bates number corresponding to the first page of the document. |
| EndProd | Bates number corresponding to the last page of the document. |
| BegProdAtt | Bates number corresponding to the first page of a document family. |
| EndProdAtt | Bates number corresponding to the last page of a document family. |

6

| PageCount | Number of pages/images for the document. |
|---|---|
| FileSize | The size of the document in megabytes |
| FileName | Filename of the original digital file |
| Custodian | Name of the person from where file is produced. |
| Author | The author of the document or Sender of Email |
| Recip | The recipient(s) of the document/Email. |
| CC | The individuals copied on the document/Email, if any. |
| BCC | The individuals blind copied on the Email, if any. |
| DocTitle | The title of a document or the subject of an email. |
| DocType | Type of document, such as Microsoft Word, Adobe Portable Document Format, Microsoft Excel. |
| Date Sent | The date an email was sent. |
| Time Sent | The time an email was sent. |
| Date Received | The date an email was received. |
| Time Received | The time an email was received. |
| Date Created | The date the file was created, if available. |
| Time Created | The time the file was created, if available. |

| Date Last Modified | The date the file was last modified, if available. |
|---|---|
| Time Last Modified | The time the file was last modified, if available. |
| Folder | The folder the document is stored in. |
| LastAuthor | Last Edited By |
| MD5Hash | MD5HASH of electronic files |
| ProdVolume | Identifies production media deliverable |
| TextPath | Path to the records' corresponding text file. Do not include actual text in load files. |
| Redacted | "Yes" for redacted documents; otherwise, blank |
| Native | The file path that the corresponding production Native file resides in. |

**Replacement Productions:** Replacement productions or overlays shall cross-reference the original production volume number, clearly identify that it is a replacement, and cross-reference the Document Number range that is being replaced.

Certain file types are not reasonably usable to the requesting party when produced in image format (such as spreadsheets, presentation files, and audio files) shall be produced in their native format with an image placeholder branded with "Document Produced in Native Format".

Should any such file types require redaction, the parties shall discuss how to do so in a mutually-agreeable manner.

b. **Native Production Exceptions**

    i. **Emails.** Emails shall be produced in a PDF format with unique identifiers (bates numbers) on each page. The PDF format will be accompanied by a load file containing the metadata.

    ii. **Redacted Documents.** A party producing ESI that requires redaction must convert it to an image format and redact the image file for production. The unredacted content of the ESI shall be searchable within the produced image file.

8

iii. **Select File Types.** Certain file types that are not reasonably usable to the requesting party in native format (such as enterprise email, structured data, some social media activity, and files created in proprietary systems) require an alternative production format. The parties shall discuss any such file types to determine whether they can be produced as near native files, as searchable PDFs, or in some other reasonably usable format.

c. **Unique Identifiers (Bates Numbers)**

For ESI a party produces in an electronic image format, it shall emboss a unique Bates number on each page in a manner that does not obstruct the page's content.

d. **Confidentiality Designations**

To designate any ESI as confidential, the parties agree that such designations must be made in accordance with the parties' Confidentiality Agreement.

e. **Document Families**

For ESI that is part of a document family (emails with attachments and documents containing embedded files), the parties shall determine responsiveness by evaluating the entire document family. If any member of the document family is subject to production, a party should produce all nonprivileged members of the same document family.

Parties shall produce document families sequentially, beginning with the parent document.

f. **Email Threads**

When producing multiple emails from a single email thread (also referred to as email chains or conversations), the producing party may limit its production to the most inclusive version(s) of the email, provided that the produced email(s) include all messages and attachments exchanged as part of the thread.

g. **Encrypted or Password-Protected Files**

A producing party shall remove any encryption or password protection prior to production if possible. If the producing party cannot do so, it shall both:

i. Provide the requesting party any available encryption keys or passwords needed to access produced ESI.

ii. Disclose the extent to which encryption or password-protection restricted its ability to review and produce potentially responsive ESI.

h. **Searchability**

For each document that is searchable in its native format and produced as an image, the producing party shall ensure that the image is searchable. If the producing party must redact a document before production, only the unredacted context should be searchable in the image.

9

### i.   Load File Specifications

A producing party shall provide a load file with each ESI production. The load file shall properly link the native file, text file, and metadata for each produced document.

The load file shall provide the metadata listed in this order (as reasonably available) for each produced document, provided the document included the metadata in its native format (for example, a producing party need not provide "Email from" metadata for a Microsoft Excel file).

### j.   Electronic Comments and Tracked Changes

Digital files that contain electronic comments and tracked changes shall be produced in a manner that preserves and displays the same.

### k.   Hard Copy Documents

  i.   **Mandatory Conversion to Electronic Files.** The parties shall scan responsive hard copy documents and produce them in compliance with this Order. For hard copy documents that are not well suited for scanning (such as large maps, schematics, photographs, carbon copies), the parties shall discuss how to best produce such documents or make them available for inspection.

### l.   Third Party Documents

Any party that obtains ESI from a third party via subpoena or FOIL shall produce a copy of the ESI to all other parties. The party in possession of the third-party ESI may produce an exact copy of the third party's production to all other parties and is under no obligation to satisfy the production requirements set forth in this Order. The producing party is encouraged, however, to Bates number the ESI consistent with how the party Bates numbers its own documents for production.

## 9.  Organizing ESI Productions

The parties' ESI productions need not comply with any interpretation of FRCP 34(b)(2)(E)(i) that would require the parties to either disclose the manner in which they keep the ESI in the usual course of business or identify the specific request to which the ESI is responsive. This requirement will apply only to hard copy document productions.

## 10. Post-Production

### a.   Privilege Log

  i.   **Timing and Content.** The producing party must serve a privilege log identifying all ESI and non-ESI that it either redacted or withheld from the production due to attorney-client privileged or work product protected content. The privilege log shall comply with FRCP 26(b)(5). To the extent the same can be provided without disclosing privileged or protected information, this log shall include the following metadata for each withheld or redacted document:

10

(A) Beginning and ending Bates numbers (or, for responsive ESI that the producing party withheld entirely, a unique identifier that the parties can use in future communications about the document).

(B) If the document is part of a document family, a group identifier or other metadata field that indicates that the file is part of a document family and identifies other family members.

(C) Custodian and duplicate custodians.

(D) Author.

(E) Email from, Email to, Email CC, and Email BCC.

(F) Email subject.

(G) Email sent date and time.

(H) File name and extension.

(I) File path.

(J) Created date and time (may be parsed into separate fields).

(K) Last modified date and time (may be parsed into separate fields).

The privilege log must also disclose the grounds for withholding or redacting each logged file (that is, the privilege or protection).

### b. Inadvertently Produced Protected Material

i. **Protection Against Waiver.** This Order provides the parties with all protections afforded by Federal Rule of Evidence 502(d). A party does not waive either attorney-client privilege or work product protection by disclosing a document in this litigation, regardless of the care the producing party took to avoid the document's disclosure. This nonwaiver provision applies to this litigation and any other state and federal proceeding. This provision applies equally to ESI and hard copy documents.

ii. **Obligation Upon Receipt of Protected Material.** If a party identifies documents (including ESI) produced by another party that it reasonably expects is subject to attorney-client privilege or work product protection, the party in receipt of the documents must promptly identify the producing party of the same. If the producing party opts to assert its attorney-client privilege or work product protection and claw the document back, it may do so by initiating the process outlined in FRCP 26(b)(5)(B).

iii. **Use of Inadvertently Produced Protected Material.** If a party inadvertently produces protected material and later seeks to claw it back by asserting a privilege or work product claim, a party challenging the claim may use the protected material in support of its challenge only to the extent that it learned the protected material's content before the producing party asserted the claim. In other words, a receiving (challenging) party may only

11

use in its challenge the portion of the purportedly protected material that it reviewed before it became aware of the producing party's attempt to claw it back.

### c. Authentication

In the interest of efficiency and to the extent possible, the parties agree to enter into a stipulation regarding the authenticity of produced ESI.

## 11. Disputes and Modifications of Order

### a. Preservation During Dispute

Should a dispute arise as to the discoverability of any ESI, the parties shall promptly take reasonable steps to preserve the subject ESI until they (or the Court) resolve the dispute.

### b. Process for Resolving Disputes

A party may obtain relief from any portion of this Order through the written consent of all other parties to this litigation or through a subsequent Court order. A party may not seek relief from the Court unless the party has conferred in good faith with the opposing party.

**Dated at Burlington, Vermont this 7ᵗʰ of July 2026.**

/s/ *Jared K. Carter*
Counsel for Plaintiff
Cornell First Amendment Clinic
Myron Taylor Hall
Ithaca, NY 14853

**Dated at Montpelier, Vermon this 7th of July 2026.**

STATE OF VERMONT

CHARITY R. CLARK
ATTORNEY GENERAL

By:　/s/ *David McLean*
David McLean
Assistant Attorney General
Office of the Attorney General
109 State Street
Montpelier, VT 05609-1001
(802) 828-5341
David.McLean@vermont.gov

Counsel for Defendants

**SO ORDERED.**

Dated: July ___, 2026

Burlington, VT

Hon. Christina Reiss

Chief United States District Judge

13